**United States District Court**
For the Northern District of California

1

2
IN THE UNITED STATES DISTRICT COURT

3

4
FOR THE NORTHERN DISTRICT OF CALIFORNIA

5

6
GRANCARE, LLC,                                    No. C 15-05362 WHA

7                                                  No. C 15-05575 WHA
                         Plaintiff,

8
    v.

9                                                  **ORDER RE MOTION TO REMAND;**
RUTH THROWER, by and through her                   **MOTION TO DISQUALIFY**
10  Successor in Interest, Rosie Lee Mills;          **COUNSEL; AND PETITION TO**
ROSIE LEE MILLS; HELEN MILLS;                      **COMPEL ARBITRATION**
LORETTA EDDINGS; LASHAWN
11  THROWER; PERRY JOHNSON, JR.;
ELLEN MASON, individuals,
12

13                       Defendants.
                                        _____

14
RUTH THROWER, by and through her
15  Successor in Interest, Rosie Lee Mills;
ROSIE LEE MILLS; HELEN MILLS;
16  LORETTA EDDINGS; LASHAWN
THROWER; PERRY JOHNSON, JR.;
17  ELLEN MASON, individuals,

18                       Plaintiffs,

19      v.

20  GRANCARE, LLC; MARINER
HEALTH CARE MANAGEMENT
21  COMPANY; MARINER HEALTH CARE,
INC.; REMY RHODES; and DOES 1-250,

22                       Defendants.

23                                      _____/

24
**INTRODUCTION**

25
        In these related cases, one of which is an underlying elder abuse action and the other of

26
which is a petition to compel arbitration in that underlying action, elder abuse plaintiffs move to

27
remand the underlying action to state court.  To the extent stated herein, the motion to remand is

28

United States District Court

For the Northern District of California

1   **GRANTED**.  Because there is no federal jurisdiction in the underlying action, the separate

2   petition to compel arbitration is **DISMISSED**.

3   **STATEMENT**

4        The procedural history of this case is complicated.  It began with the death of Ruth

5   Thrower, who died in July 2015 while residing at Grancare Nursing Center in San Pablo,

6   California.  In September 2015, Thrower, by and through her successor in interest Rosie Lee

7   Mills, along with other family members, sued Grancare LLC and its administrator Remy

8   Rhodes in Contra Costa County Superior Court, alleging elder abuse, wrongful death,

9   negligence, negligent hiring, and fraud.

10       In November 2015, two months after Thrower's successors filed the state court action,

11  Grancare filed a federal court petition to compel arbitration in the underlying state court action

12  under 9 U.S.C. 4, which was assigned to the undersigned judge (Case No. 15–cv–5362).

13       In December 2015, Grancare removed the underlying state court action to federal court,

14  and the case was assigned to Judge Maxine Chesney (Case No. 15–cv–5575).  Grancare

15  asserted removal to federal court had been proper because Remy Rhodes, Grancare's

16  administrator, had been "fraudulently joined" in the state court action.  Shortly after removal,

17  Thrower's successors filed a motion to remand, after which Grancare filed a motion to

18  disqualify counsel for Thrower's successors.  The alleged basis for the disqualification is that

19  one of the attorneys for Thrower's successors previously worked at the law firm representing

20  Grancare herein and had represented Grancare in other cases.  An order then related the

21  underlying elder abuse case and the separate petition to compel arbitration.

22       Now pending are the motion to remand, the motion to disqualify counsel, and the

23  petition to compel arbitration in the underlying action.  This order follows full briefing and oral

24  argument.

25  **ANALYSIS**

26  **1.**      **MOTION TO REMAND.**

27       Cases filed in state court may be removed to federal court if the federal court would

28  have had original jurisdiction over the suit.  28 U.S.C. 1441.  A federal court must remand a

2

1    removed case to state court for lack of subject-matter jurisdiction.  28 U.S.C. 1447(c).  If a

2    defendant establishes fraudulent joinder, the citizenship of fraudulently joined parties will not

3    defeat diversity.  To prove fraudulent joinder, a defendant must show that "the plaintiff fail[ed]

4    to state a cause of action against a resident defendant, and the failure is obvious according to

5    settled rules of the state."  *McCabe v. Gen. Foods. Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)

6    (citation omitted).  "[I]f there is any possibility that the state law might impose liability on a

7    resident defendant under the circumstances alleged in the complaint, the federal court cannot

8    find that joinder of the resident defendant was fraudulent, and remand is necessary."  *Hunter v.*

9    *Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009) (quoting *Florence v. Crescent Res.,*

10   *LLC*, 484 F.3d 1293, 1299 (11th Cir. 2007)).

11          The undersigned judge has previously made clear that "some room must exist between

12   the standard for dismissal under Rule 12(b)(6), for example, and a finding of fraudulent

13   joinder."  *Ramirez v. Speltz*, Case No. 15-cv-3538, 2015 WL 5882065 at *2 (N.D. Cal. Oct. 8,

14   2015) (internal citation omitted).  This means that to show fraudulent joinder, a defendant must

15   demonstrate "that there is no possibility that the plaintiff will be able to establish a cause of

16   action in state court against the alleged sham defendant.  Remand shall be granted unless the

17   defendant can show that the plaintiff would not be afforded leave to amend his complaint to

18   cure the purported deficiency."  *Vincent v. First Republic Bank Inc.*, Case No. 10-cv-1212, 2010

19   WL 1980223 at *3 (N.D. Cal. May 17, 2010) (internal citation omitted).

20          The parties agree that plaintiffs are California residents and also agree that defendant

21   Remy Rhodes is a California resident.  The dispute is whether there is "any possibility" that

22   plaintiffs could establish a cause of action against Rhodes in state court.  This order finds that

23   there is such a possibility.

24          As an initial matter, the California Supreme Court has clearly held that nursing home

25   administrators can be held individually liable for elder abuse.  *Delaney v. Baker*, 20 Cal. 4th 23

26   (1999).  As to the elder abuse claim, under California Welfare and Institutions Code Section

27   15610.07(a), "abuse of an elder or dependant adult" includes "neglect."  Pursuant to the

28

*United States District Court*
For the Northern District of California

3

United States District Court
For the Northern District of California

California Elder Abuse statute and the model California Civil Jury Instructions, a plaintiff must

establish the following elements to prove neglect:

(1) that the defendant had care or custody of the plaintiff;

(2) that the plaintiff was 65 years of age or older while he was in the
defendant's care or custody;

(3) that the defendant failed to use the degree of care that a reasonable
person in the same situation would have used by

- failing to assist in personal hygiene or in the provision of food,
clothing, or shelter,

- failing to provide medical care for physical and mental health
needs,

- failing to protect from health and safety hazards, or

- failing to prevent malnutrition or dehydration;

(4) that the plaintiff was harmed; and

(5) that the defendant's conduct was a substantial factor in causing
plaintiff's harm.

Cal. Welf. & Inst. Code § 15610.57; Cal. Civil Jury Instructions Section 3103.  Furthermore, to

succeed on an Elder Abuse Act claim, a plaintiff must show that the defendant is "guilty of

something more than negligence; he or she must show reckless, oppressive, fraudulent, or

malicious conduct."  *Delaney*, 20 Cal. 4th at 31–32; Cal. Welf. & Inst. Code § 15657.

Here, Thrower's successors have pled sufficient facts such that there is a "possibility" of

a cause of action in state court against Rhodes.  Specifically, the complaint alleges as follows:

> At all times relevant hereto Defendant REMY RHODES was a
> resident of the State of California and was the Administrator and
> managing agent of the FACILITY, responsible for the day-to-day
> operations of the FACILITY, and was, and is, a resident of the
> State of California.  In that role at all relevant times herein REMY
> RHODES owed independent duties of care to RUTH THROWER
> pursuant to 22 C.C.R. § 72513, as well as all other lawful bases,
> which she violated as more fully set forth below leading to injury
> of RUTH THROWER (Compl. at ¶4).
>
> *           *           *
>
> REMY RHODES, as the administrator of the Facility, owed a duty
> to RUTH THROWER pursuant to California Code of Regulations
> § 72513(f) to screen RUTH THROWER for admission to the
> Facility to ensure that the Facility admits only those patients for
> whom it can provide adequate care.  REMY RHODES failed to

4

United States District Court
For the Northern District of California

meet this duty to RUTH THROWER thereby causing RUTH THROWER injury (Compl. at ¶45).

\*        \*        \*

REMY RHODES, as the administrator of the Facility, owed a duty to RUTH THROWER pursuant to California Code of Regulations §72513(f) to conduct either a pre-admission personal or telephone interview with RUTH THROWER physician.  REMY RHODES failed to meet this duty to RUTH THROWER thereby causing RUTH THROWER injury (Compl. at ¶46).

\*        \*        \*

That in fact Administrator REMY RHODES (Administrator), Marivic Yumul (Director of Nursing) and many certified nursing assistants, registered nurses, licensed vocational nurses and others whose names are presently not known to RUTH THROWER but will be sought via discovery, were unfit to perform their job duties and the DEFENDANTS knew, or should have known, that that they were unfit and that this unfitness created a risk to elder and infirm residents of the FACILITY such as RUTH THROWER (Compl. at ¶46).

\*        \*        \*

Specifically the DEFENDANTS knew, and accepted responsibility for RUTH THROWER'S propensity to wander, high risk to suffer further falls, and that she therefore required special care and assistance including creation of and implementation of meaningful care plans to prevent falls, 24-hour supervision and monitoring, assistance and monitoring with ambulation and transferring, the provision of safety and assistance devices to prevent accidents, assistance and monitoring with other activities of daily living, and the implementation of interventions to prevent further falls.

That notwithstanding this knowledge, the DEFENDANTS knowingly disregarded this risk to RUTH THROWER and wrongfully withheld required care from RUTH THROWER including 24-hour supervision and monitoring, assistance and monitoring with ambulation and transferring, the provision of safety and assistance devices to prevent accidents, assistance and monitoring with other activities of daily living, and the implementation of interventions and failing to have competently trained staff assist RUTH THROWER in transfer and locomotion to prevent further falls and according to proof at time of trial (Compl. at ¶¶23–24).

Furthermore, Thrower's successors allege that Rhodes' failure to conduct a pre-admission interview with Thrower's doctor, failure to properly screen Thrower to ensure the facility could provide adequate care, and failure to "update the assessments as frequently as necessary to determine the specific interventions that should be put in place to prevent" Thrower from suffering falls, constituted neglect (Compl. at ¶28).

Thrower's successors have clearly pled the first element of neglect against Administrator Rhodes, stated above, as Welfare and Institutions Code Section 15610.17 explicitly includes an "administrator" as a "care custodian" under the act.  The second element, that Thrower had been over 65 years old during the time in question, has also been clearly pled. As to the third element, Rhodes' alleged failure to conduct any pre-admission screening or pre-admission interview with Thrower's doctor, as specifically required by 22 C.C.R. § 75213, and her alleged failure to adequately update the screening assessments, could constitute an unreasonable failure "to protect [Thrower] from health and safety hazards."  The fourth element, harm, has also been adequately pled, as Thrower suffered injury and eventually died.

The last element is causation, which must meet the substantial factor test under California law.  "The substantial factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical." *Rutherford v. Owens-Illinois, Inc.*, 16 Cal. 4th 953, 978 (1997).  Thus, "a very minor force that does cause harm is a substantial factor." *Bockrath v. Aldrich Chemical Co., Inc.*, 21 Cal. 4th 71, 79 (1999). At this stage, Thrower's successors' allegations concerning Rhodes' failure in overseeing the day-to-day operations of the facility and her specific failure to conduct screenings and pre-admission interviews, as required by regulation, constitute at least "a very minor force that [caused] harm." *Ibid.*

Thrower's successors have also adequately pled their negligence claim, via the doctrine of negligence per se.  The California Court of Appeal has described the applicable standard as follows:

> Under the negligence per se doctrine, negligence is presumed if (1) the defendant violated a statute, ordinance, or regulation of a public entity; (2) the violation proximately caused death or injury to the plaintiff; (3) the death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and (4) the plaintiff was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted.

*Navarrez v. San Marino Skilled Nursing and Wellness Centre*, 221 Cal.App.4th 102, 124 (2013) (citing Cal. Evid. Code Section 669).

United States District Court

For the Northern District of California

1         As to the *first* element, Thrower's successors have alleged that Rhodes violated 22

2   C.C.R. § 72513(f), by failing to screen Thrower prior to admission to ensure the facility

3   admitted only those patients for whom it could provide adequate care.  Rhodes also allegedly

4   violated the same regulation by failing to conduct a pre-admission interview with Thrower's

5   doctor, as required by the regulation.  *Second*, Thrower's successors have adequately pled

6   causation, as they allege that Thrower was especially susceptible to falls due to her dementia,

7   that she suffered several falls while at the facility, and that a proper pre-admission interview and

8   screening would have better prepared the facility to care for her in this regard.  *Third*, it is

9   plainly clear from Section 72513(f) that its purpose is to require that elder care facilities take

10   proper steps before a patient is admitted to ensure the facility can handle them and to ensure

11   their needs are met once they are there.  *Fourth*, as a patient at an elder care facility, Thrower

12   constituted the type of person who the regulation was meant to protect.

13         In opposition to the motion to remand, Grancare largely relies on a recent decision from

14   our district — *Johnson v. Grancare, LLC, et al.*, Case No. 15-cv-3585, 2015 WL 6865876

15   (N.D. Cal. Nov. 9, 2015) (Judge Richard Seeborg).  In *Johnson*, the successors of a patient who

16   died while at a Grancare facility sued Grancare, along with Administrator Remy Rhodes, for

17   elder abuse and wrongful death in state court.  Grancare removed the action to federal court

18   contending that Rhodes had been fraudulently joined and plaintiffs filed a motion to remand.

19   Judge Seeborg denied the motion to remand, finding that Rhodes had been fraudulently joined

20   largely because she was only mentioned in the introductory portion of the complaint and there

21   were no specific allegations against her.

22         Judge Seeborg's decision is readily distinguishable in several respects.  *First*, the

23   complaint in *Johnson* did not contain a single specific allegation against Rhodes.  Instead, she

24   was merely identified at the beginning of the complaint, which *Johnson* explicitly took issue

25   with, stating:  "Beyond this introduction, virtually every sentence that follows is addressed to all

26   defendants collectively — none are [sic] directed specifically at Rhodes."  *Id*. at *3.  Here, by

27   contrast, the complaint alleges several facts expressly relating to Rhodes, as detailed above.

28   Specifically, Rhodes allegedly failed to screen Thrower for admission to ensure the facility

1   admitted only those patients for whom it could provide adequate care (as the administrator is

2   required to do by regulation) and Rhodes also allegedly failed to conduct a pre-admission

3   interview with Thrower's doctor (as the administrator is required to do by regulation).

4       *Second*, in evaluating the plaintiffs' motion to remand, *Johnson* applied a different legal

5   standard than this order applies.  As stated above, to prove fraudulent joinder, a defendant must

6   show that "the plaintiff fail[ed] to state a cause of action against a resident defendant, and the

7   failure is obvious according to settled rules of the state."  *McCabe v. Gen. Foods. Corp.*, 811

8   F.2d 1336, 1339 (9th Cir. 1987) (citation omitted).  Our court of appeals has not explicitly

9   established how this standard interacts with the "plausibility" standard used in evaluating

10  motions to dismiss under Rule 12(b)(6).  The vast majority of district court decisions in our

11  circuit on this issue — about 110, all of which have been reviewed for this order — have

12  determined that the fraudulent joinder standard is tougher to meet than the Rule 12(b)(6)

13  standard, such that fraudulent joinder will not be found if there is "any possibility" that the

14  plaintiff could state a claim.  *Hunter*, 582 F.3d at 1044.  In previous orders, the undersigned

15  judge has agreed with the vast majority of district courts and determined that a mere "glimmer

16  of hope" that the plaintiff could establish a claim is sufficient to defeat removal on the basis of

17  fraudulent joinder.  *Ramirez,* 2015 WL 5882065 at *2.

18      *Johnson*, in ruling on the plaintiffs' motion to remand, broke with the vast majority of

19  district courts and determined that the "standard for determining whether a defendant is

20  fraudulently joined is similar to that of a 12(b)(6) motion to dismiss."  *Johnson*, 2015 WL

21  6865876 at *2.  This order, in contrast, follows the majority rule, and finds that Thrower's

22  successors have established at least a possibility of stating a claim against Rhodes.

23      *Third*, the complaint in *Johnson* only asserted claims against Rhodes for elder abuse and

24  wrongful death.  The plaintiffs in *Johnson* did not assert a negligence claim.  Here, Thrower's

25  successors have asserted claims for elder abuse, wrongful death, negligence, negligent hiring,

26  and fraud.  As detailed above, in addition to alleging a claim for elder abuse, Thrower's

27  successors have pled a possible claim of negligence via the negligence per se doctrine.

28

8

United States District Court
For the Northern District of California

1    At the hearing, defense counsel put forth several other arguments. Initially, defense

2    counsel argued that the complaint contains no allegations against Rhodes at all. Not so. As

3    detailed above, the complaint alleges several facts specific to Rhodes and other allegations

4    against all defendants collectively. Moreover, defense counsel repeatedly asserted that any duty

5    Rhodes owed was not owed to the nursing facility's patients, but rather was owed "to the

6    building." Defense counsel cited no authority for this premise and it is clear from the statute

7    and from California case law that the duties a nursing facility administrator owes go well

8    beyond the care and maintenance of a building. As stated above, the California Supreme Court

9    has clearly held that nursing home administrators can be held personally liable for harms

10   suffered by patients in their facilities. *Delaney*, 20 Cal. 4th at 31–32

11   For these reasons, this order finds that defendant Remy Rhodes has not been

12   fraudulently joined and thus there is no federal jurisdiction over this case.

13       **2.    MOTION TO DISQUALIFY COUNSEL.**

14   Shortly after Thrower's successors filed their motion to remand, Grancare filed a motion

15   to disqualify counsel for Thrower's successors. The alleged basis for the disqualification is that

16   one of the attorneys for Thrower's successors previously worked at the law firm representing

17   Grancare herein and had represented Grancare in other cases. Accordingly, we are faced with

18   somewhat of a "chicken or the egg" problem — that is, whether the disqualification motion

19   should be decided before the remand motion, to eliminate any danger of having the

20   jurisdictional issue litigated by potentially disqualified counsel, or whether the remand motion

21   should be decided first, so that matters outside federal jurisdiction are not ruled on.

22   Long ago, the Supreme Court laid down the bedrock principle that "[j]urisdiction is

23   power to declare the law, and when it ceases to exist, the only function remaining to the court is

24   that of announcing the fact and dismissing the cause." *Ex Parte McCardle*, 74 U.S. 506, 514

25   (1868). Although our court of appeals has never addressed the sequence in which a district

26   court should rule on a jurisdictional motion versus a motion to disqualify counsel, every district

27   court that has faced the issue has ruled on the jurisdictional issue first. That is, every district

28   court that has granted a motion to remand while also facing a motion to disqualify has deferred

the disqualification motion to the state court because the district court lacked jurisdiction to

decide it.  Most recently, Judge Jon Tigar summarized the issue as follows:

> [Defendant] has also filed motions to dismiss, a motion to disqualify one of Plaintiffs' counsel, and a motion to shorten time so that the motion to disqualify can be heard before the motion to remand is decided.  But as explained supra, the Court lacks jurisdiction over this action.  The Court therefore cannot address the merits of any of the other pending motions.
>
> The Court takes attorney disqualification rules seriously.  The Court also recognizes that, if Plaintiffs' counsel is in fact prohibited from representing Plaintiffs in this action, Plaintiffs will have improperly gained the assistance of a disqualified counsel in seeking remand of this case.  The Court, however, has an obligation in the first instance to satisfy itself of its own authority, and would be obligated to remand this action sua sponte even had Plaintiffs' counsel not been involved in making the motion.  And the only prejudice of which Defendants can complain is the prejudice of not having its motion to disqualify heard by a court which lacks jurisdiction over the case.  The motion to dismiss, and the motion to disqualify counsel, like any motion to sever, can and should be handled in the first instance by the San Francisco Superior Court.

*Carper v. Adknowledge, Inc.*, Case No. 13-cv-3921, 2013 WL 5954898 at *5–6 (N.D. Cal. Nov.

4, 2013) (Judge Jon Tigar) (internal citations omitted).

So too here.  Grancare's motion to disqualify counsel shall be heard by the state court

judge to which this action is assigned.

### 3.    PETITION TO COMPEL ARBITRATION.

As detailed above, shortly before removing the elder abuse action to federal court,

Grancare filed a separate federal court petition to compel arbitration in the underlying state

court action under 9 U.S.C. 4 (Case No. 15–cv–5362).  "As the Supreme Court has explained,

[Section] 4 'bestows no federal jurisdiction but rather requires for access to a federal forum an

independent jurisdictional basis over the parties' dispute.'  Thus, a federal court has jurisdiction

over a petition to compel arbitration if the federal court would have jurisdiction over the

underlying substantive dispute."  *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel.*

*Lhotka*, 599 F.3d 1102, 1106 (9th Cir. 2010) (citing *Vaden v. Discover Bank*, 556 U.S. 49, 59

(2009)).

United States District Court

For the Northern District of California

10

1    For the reasons stated above, there is no federal subject-matter jurisdiction over the

2    underlying substantive dispute because the parties are not completely diverse.  The petition to

3    compel arbitration failed to join Remy Rhodes as required by Rule 19.  Thus, there is no federal

4    subject-matter jurisdiction over the related petition to compel arbitration and that petition is

5    therefore **DISMISSED.**

6        **4.       ATTORNEY'S FEES AND COSTS.**

7    "An order remanding a case may require payment of just costs and any actual expenses,

8    including attorney's fees, incurred as a result of the removal."  28 U.S.C. 1447(c).  The standard

9    for awarding fees and costs should be based on the reasonableness of the removal, and absent

10   unusual circumstances a court may award attorney's fees and costs only where the removing

11   party lacked an objectively reasonable basis for seeking removal.  *Martin v. Franklin Capital*

12   *Corp.*, 546 U.S. 132, 136 (2005).

13       Here, Thrower's successors seek $2,700 in attorney's fees and costs incurred as a result

14   of the improper removal.  Based on Grancare's notice of removal, its arguments in its papers,

15   and its absurd assertions at oral argument, this order finds that Grancare's removal of this action

16   from state court was patently unreasonable.  Specifically, Grancare's counsel lacked any

17   reasonable basis for contending that the complaint contained no specific allegations against

18   Rhodes (which the complaint clearly did) and for somehow claiming that Rhodes only owed

19   duties "to the building," and not to patients at the nursing facility.  Accordingly, Thrower's

20   successors' request for $2,700 in attorney's fees and costs is **GRANTED**.

21                            **CONCLUSION**

22       To the extent stated above, the motion to remand the underlying case (No. 15-cv-5577)

23   to Contra Costa County Superior Court is **GRANTED**.  The request for attorney's fees and costs

24   in the amount of $2,700 is **GRANTED**.  The motion to disqualify counsel shall be heard by the

**United States District Court**
For the Northern District of California

1   state court judge.  The separate petition to compel arbitration (No. 15-cv-5362) is **DISMISSED**.

2   The Clerk shall please **CLOSE BOTH FILES.**

3

4       **IT IS SO ORDERED.**

5

6   Dated:  March 21, 2016.



7   WILLIAM ALSUP
    UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California